**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| JOSE LUIS CALDERON,<br><br>    Plaintiff,<br><br>    v.<br><br>CAROLYN W. COLVIN, Acting Commissioner of Social Security,<br><br>    Defendant. | Case No.: 1:14-cv-00161-BAM<br><br>**ORDER REGARDING PLAINTIFF'S SOCIAL SECURITY COMPLAINT** |

## I.   INTRODUCTION

Jose Luis Calderon ("Plaintiff") seeks judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying his application for Supplemental Security Income under Title XVI of the Social Security Act. The matter is before the Court on the parties' briefs, which were submitted without oral argument to United States Magistrate Judge Barbara A. McAuliffe.[1] The Court finds the decision of the Administrative Law Judge ("ALJ") supported by substantial evidence in the record as a whole and based upon proper legal standards. Accordingly, the Court AFFIRMS the Commissioner's decision to DENY benefits.

---

[1] Pursuant to 28 U.S.C. § 636(c), the parties consented to conduct all further proceedings in this case before the Honorable Barbara A. McAuliffe, United States Magistrate Judge. (Docs. 7, 8).

1

## II.  FACTS

**A.  Procedural Background**

Plaintiff was denied benefits in September 2008 following a previous workers' compensation claim. AR 17.[2] This denial created a presumption that Plaintiff is not disabled, to which he could rebut by showing "changed circumstances" since that determination. *See Chavez v. Bowen*, 844 F.2d 691, 693 (9th Cir. 1988).

On December 29, 2009, Plaintiff filed an application for supplemental security income alleging an inability to work beginning July 28, 1998. AR 210. Plaintiff's application was denied initially on May 3, 2010, and upon reconsideration on September 15, 2010. AR 105, 113. Subsequently, Plaintiff requested a hearing before an ALJ. AR 121. ALJ Caroline H. Beers held a hearing on February 7, 2012, and issued an order denying benefits on April 27, 2012. AR 10–25. New medical evidence in the record showed changed circumstances since Plaintiff's previous disability determination, but the ALJ determined those changes did not result in Plaintiff being disabled. The ALJ's decision became final when the Appeals Council denied Plaintiff's request for review on October 25, 2013. AR 1–6. This appeal followed.

**B.  Testimony**

On February 7, 2012, ALJ Beers presided over a video hearing from Oakland, California. AR 33, 36. Plaintiff appeared and testified from Fresno, California, with the assistance of a Spanish interpreter. AR 35. Plaintiff was represented by attorney Melissa Proudian. *Id.*

The last grade Plaintiff completed was the ninth grade in Mexico. AR 40. Plaintiff has a driver's license, which he uses twice a week to go to the pharmacy and doctor. AR 40. His last job was picking fruit and pruning trees, and the heaviest weight lifted at that job was fifty pounds. AR 40. He stopped working on July 25, 1998, when he injured his back. AR 40.

Plaintiff primarily complains of issues with his lower back—inflammation, sensation of burning muscles, and sharp pain—that prevent him from working. AR 40–41. Plaintiff lives with his parents. AR 41. On a typical morning, Plaintiff goes walking for about forty minutes. AR 41. He primarily washes dishes as a chore during the day. AR 41. Plaintiff also goes with his parents

---

[2]  References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

2

to the grocery store about once a week. AR 42. On occasion, he may help get things off the shelf and stand in line to pay for the items. AR 42. He does not help carry the groceries into the house. AR 42. He does not attend church or any other meetings or organizations. AR 44. He has friends that visit him about once a week and family that visits monthly. AR 43. Plaintiff receives food stamps and does not have a source of income. AR 46. He watches television for about an hour per day, but does not own a computer or know how to use one. AR 43. Plaintiff can clean himself only from the waist up and sometimes asks his mother to help him from the waist down. AR 44. Plaintiff obtained a back brace in 1999 and uses it all of the time. AR 42.

At one time, Plaintiff played soccer and went out with his friends, but he cannot do either now because of his back problems. AR 45. His pain has increased since the last time he was denied benefits. AR 46. Plaintiff takes Soma as an anti-inflammatory medication, which can occasionally make him dizzy. AR 44. He lies down to rest or sleep for about four hours every day to reduce the pain in his back. AR 45. He can concentrate for fifteen minutes before requiring a three hour break. AR 46.

Vocational expert ("VE"), Robin Scher, summarized Plaintiff's work history as harvest worker performed at the medium level. AR 48.

The ALJ asked VE Scher several hypothetical questions contemplating an individual of the same age, education, language, and work background as Plaintiff. In the first hypothetical, the ALJ asked the VE about an individual with Plaintiff's age, education, and work history, limited to light work (can lift and carry twenty pounds occasionally and ten pounds frequently), "can sit for six hours and stand and/or walk for six hours…can occasionally climb stairs and crawl and cannot work on ladders or scaffolds." AR 49. The VE determined this hypothetical individual would be precluded from Plaintiff's past work, but there are other jobs in the economy that this individual could perform. AR 49. The VE provided four example light-exertion occupations including: (1) apple packing header, (2) advertising materials distributor, (3) flagger in the construction industry, and (4) agricultural produce sorter. AR 49–52. The VE also concluded that the individual could perform sedentary work as a (1) bench assembler, (2) eyeglass frame polisher, and (3) finisher. AR 53.

Next, the ALJ asked the VE about a second hypothetical individual who "can sit for four hours, can stand and/or walk for four to six hours with normal breaks, can frequently and occasionally lift ten pounds. This individual does not need an assistive device. This individual can occasionally bend and stoop and crouch." AR 53. The VE determined that, in addition to the previous advertising materials distributor position, this individual could perform a number of bench assembly jobs as well. AR 54.

In a third hypothetical question, the ALJ asked about an individual that could only sit, stand, and walk one hour per day. AR 57. The VE determined this individual would be precluded from all work. AR 57.

Finally, Plaintiff's attorney, Melissa Proudian, asked the VE about a hypothetical individual limited to light work with Plaintiff's age, education, and work history, but the individual would need one additional, unscheduled, one-hour rest break during the day. AR 57. The VE determined that the individual would not be able to perform Plaintiff's past work or any other work in the economy. AR 57.

**C. Medical Record**

*1. Treating Physician, Dinesh Sharma, M.D.*

Plaintiff's only treating physician, Dr. Sharma, performed workers' compensation Progress Reports from December 2008 through March 2010, which indicated Plaintiff was in need of further therapies and injections for sciatica and failed back surgery. AR 289–304, 345.

Dr. Sharma's treatment notes, which are generally repetitive, begin in May 2010 and continue through December 2011. AR 338–344, 349–386. Dr. Sharma noted a decrease in range of motion alternating between 25% and 50%, paraspinal spasms, abnormal sensory examination, abnormal motor examination, and abnormal deep tendon reflexes. AR 340–343. Dr. Sharma administered injections every month, with the exception of July 2011, for Plaintiff's sciatica, which produced good results and improved Plaintiff's functionality. AR 338–344, 349–386.

In December 2011, Dr. Sharma completed a physical capacities questionnaire limiting Plaintiff to three hours of work per day—one hour sitting, standing, and walking, each—and alternating between sitting and standing every fifteen minutes. AR 351. Dr. Sharma noted

Plaintiff could lift and carry twenty pounds occasionally. *Id.* There are no additional treatment notes after December 2011.

### 2. Examining Physician, Rustom Damania, M.D.

Dr. Damania, one of two examining physicians, examined Plaintiff in March 2010 and observed Plaintiff to have difficulty getting on and off the exam table. AR 22, 312. Plaintiff had no visual, communicative, or manipulative limitations. *Id.* The diagnostic impression was lumbosacral discogenic disease with a history of surgery, subjectively little improvement, and hypertension. *Id.* Plaintiff "should be able to lift and carry ten pounds occasionally and ten pounds frequently." *Id.* Dr. Damania determined Plaintiff could sit for four hours, stand and walk for four to six hours in a normal workday, but Plaintiff could do only occasional bending, stooping and crouching. *Id.*

### 3. Examining Physician, Fariba Vesalia, M.D.

On March 14, 2012, Dr. Vesalia, a second examining physician, observed Plaintiff to have no difficulty taking off or putting on his shoes, no difficulty getting on the exam table, and no difficulty moving around the exam room. AR 16, 387–397.  Dr. Vesali determined Plaintiff can lift and carry fifty pounds occasionally and twenty pounds frequently. AR 391. Dr. Vesali also found Plaintiff could sit, stand, and walk for six hours each in an eight hour workday. AR 392. Plaintiff can frequently climb stairs, ramps, ladders, or scaffolds; could frequently stoop, kneel, crouch, and crawl; and can continuously balance. AR 394. Plaintiff can continuously push, pull, feel, finger, and handle, but only frequently reach overhead. AR 393.

### D. The ALJ Decision

Using the Social Security Administration's five-step sequential evaluation process, the ALJ determined that Plaintiff did not meet the disability standard. AR 19–24. More particularly, the ALJ found that Plaintiff had not engaged in any substantial gainful activity since December 29, 2009, the application date. AR 19. Further, the ALJ determined Plaintiff had the following severe impairments: status-post lumbar fusion of the L5 in October 2000, with failed back syndrome; degenerative disc and joint disease at the L5; sciatica; and obesity (5'4" and 212 pounds—BMI 36.4)." AR 19. Nonetheless, the ALJ determined that Plaintiff did not have an

impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. AR 19.

Based on her review of the entire record, the ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to perform the limited range of medium work as defined in 20 CFR 416.967(c), because "he can carry fifty pounds occasionally and twenty-five pounds frequently, and can sit, stand, and walk for six hours each, in a typical eight-hour workday." AR 20. The ALJ added that Plaintiff cannot climb ladders or scaffolds, but can occasionally climb ramps and stairs, and can occasionally balance, stoop, kneel, crouch, and crawl. AR 20. The ALJ also found Plaintiff was unable to perform his only past relevant work as a harvest worker. AR 23. However, the ALJ determined that Plaintiff could perform a significant number of other jobs that exist in the national economy, including advertising material distributor, flagger, apple-packing header, and sorter. AR 24. As a result, the ALJ determined that Plaintiff has not been disabled as defined in the Social Security Act since December 20, 2009, the date the application was filed. AR 24.

### III.     DISCUSSION

This Court reviews the Commissioner's final decision under the substantial evidence standard; the decision will be disturbed only if it is not supported by substantial evidence or is based on legal error. See 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive."); *Smolen v. Chater*, 80 F.3d 1273, 1279 (9th Cir. 1996). Substantial evidence means "more than a mere scintilla but less than a preponderance. It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (internal quotation marks and citations omitted). The court will affirm the ALJ's decision if the evidence is susceptible to more than one rational interpretation. *See id.*; *see also Bustamante v. Massanari*, 262 F.3d 949, 953 (9th Cir. 2001) ("If the evidence can support either outcome, we may not substitute our judgment for that of the ALJ."). The record as a whole must be considered, weighing both the "evidence that supports and the evidence that detracts from the ALJ's conclusion." *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985). This court reviews "only the

reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely," *Orn*, 495 F.3d at 630, nor may the court "affirm simply by isolating a 'specific quantum of supporting evidence.'" *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (citation omitted).

In order to qualify for benefits, a claimant must establish that he or she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 1382c (a)(3)(A). A claimant must show that he or she has a physical or mental impairment of such severity that he or she is not only unable to do his or her previous work, but cannot, considering his or her age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989). The burden is on the claimant to establish disability. *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990).

Here, Plaintiff argues that the ALJ impermissibly rejected the opinion of Plaintiff's treating physician and improperly discounted Plaintiff's own subjective testimony. The Court finds that the ALJ applied the proper legal standards, and her reasons for rejecting the treating physician's opinion and Plaintiff's subjective testimony are supported by substantial evidence in the record.

**A. The ALJ Properly Rejected the Treating Physician's Opinion**

Plaintiff contends the ALJ erred in disregarding the opinion of his treating physician, Dr. Sharma. (Doc. 12 at 7–16.). The Commissioner contends, however, that the ALJ rejected Dr. Sharma's opinion for specific and legitimate reasons that are supported by substantial evidence in the record. (Doc. 13 at 5.).

Cases in this circuit distinguish among the opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining physicians). *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). "As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat

the claimant." *Id.* When the treating doctor's opinion is not contradicted by another doctor, it may be rejected only for "clear and convincing" reasons. *Baxter v. Sullivan*, 923 F.2d 1391, 1396 (9th Cir. 1991). When the treating doctor's opinion is contradicted by another doctor, the Commissioner may only reject this opinion by providing "specific and legitimate reasons" supported by substantial evidence in the record. *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983). Where the evidence is susceptible to more than one rational interpretation, however, we must uphold the decision of the ALJ. *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008). "Finally, the court will not reverse an ALJ's decision for harmless error, which exists when it is clear from the record that the ALJ's error was inconsequential to the ultimate nondisability determination." *Id.* (citations and quotations omitted).

If a treating physician's opinion is not given controlling weight because it is not well supported or because it is inconsistent with other substantial evidence in the record, the ALJ is instructed to consider the factors listed in Section 404.1527(d)(2)–(6) in determining what weight to accord the opinion of the treating physician. C.F.R. § 404.1527(d)(2). Those factors include the "[l]ength of the treatment relationship and the frequency of examination" by the treating physician and the "nature and extent of the treatment relationship" between the patient and the treating physician. 20 C.F.R. § 404.1527(d)(2)(i)–(ii). Other factors include the supportability of the opinion, consistency with the record as a whole, specialization of the physician, and extent to which the physician is familiar with disability programs and evidentiary requirements. 20 C.F.R. § 404.1527(d)(3)–(6).

In reviewing the medical evidence and rejecting Dr. Sharma's opinion, the ALJ stated the following:

> In reaching the RFC determination herein, the undersigned relies for the most part on the findings of Dr. Vesali, according his opinion great probative weight because it is consistent with the preponderance of the medical evidence of record as a whole, including the treatment notes of Dr. Sharma. In addition, Dr. Vesali examined the [Plaintiff] personally and reviewed the treating physician's notes (Exhibits B9F and B12F) prior to rendering his findings and opinion. Finally, Dr. Vesali is a board certified specialist in physical medicine and rehabilitation.
>
> . . . .
>
> I accord no weight to the opinion of Dr. Sharma because it is not consistent with his underlying treatment notes and the findings and reported [sic] of the State

8

> agency examining consultants Dr. Damania and Dr. Vesali. Dr. Sharma rendered his RFC assessment on December 7, 2011, and yet his own treatment notes for the months leading up to that date indicate good relief from injections, including improved range of motion and more functionality in the claimant's activities of daily living, contradicting his own extremely restrictive RFC assessment.
>
> In addition, Dr. Vesali, who performed her examination of the claimant a mere 3 months later, renders an opinion which is starkly inconsistent with that of Dr. Sharma. The undersigned finds the opinion of Dr. Vesali more reliable and thus more credible because she had the opportunity to also review all of Dr. Sharma's treatment notes.

AR 22–23.

Overall, the ALJ noted that Dr. Sharma's treating opinion was contradicted by an examining physician's opinion. AR 387–397. While Dr. Sharma reported, essentially, that Plaintiff could not work, examining physician, Dr. Vesali, found Plaintiff capable of a limited range of medium work. AR 350, 390. Upon review, the Court finds that the ALJ presented specific and legitimate reasons for rejecting the treating physician's opinion and the Court addresses each reason independently.

### 1. *Dr. Sharma's Opinion is Inconsistent With His Underlying Treatment Notes*

The ALJ accorded no weight to Plaintiff's treating physician, Dr. Sharma, because his opinion is inconsistent with his own treatment notes. AR 22. The Court agrees with the ALJ and finds this reason supported by substantial evidence.

From May 4, 2010, through December 6, 2011, with the exception of one month, Plaintiff received monthly Neural Therapy Injections in his sciatic nerve, consisting of Dexamethasone 4mg and Lidocaine 1% 5cc, which were tolerated well and provided good relief lasting three to four weeks. AR 338–344, 349–386. The ALJ noted that the injections provided "good relief" for Plaintiff, "including improved range of motion and more functionality in [Plaintiff's] activities of daily living." AR 22. However, the day after Dr. Sharma's last treatment on December 6, 2011— where Plaintiff received an injection that provided "good benefit" lasting three to four weeks— Dr. Sharma issued his RFC assessment that limited Plaintiff to three hours of work per day, one hour each of sitting, standing, and walking, and alternating every fifteen minutes between sitting and standing. AR 350–351. The ALJ disagreed with Dr. Sharma's restrictive RFC and opined that

Dr. Sharma's opinion was in conflict with the positive relief and increased range of motion experienced from the monthly injections, as detailed in the treatment notes, and this supported her decision to accord no weight to Dr. Sharma's opinion. AR 22.

Plaintiff argues that the ALJ's claim is "patently false" because the treatment notes for the months leading up to the last visit showed a steady 50% reduction in range of motion. (Doc. 12 at 14). However, Plaintiff's argument is misguided. While Plaintiff points to the physical examination notes, the ALJ relied on the treatment notes and the overall efficacy of the sciatic nerve injections. The Court agrees with the ALJ that Dr. Sharma's restrictive RFC assessment is internally inconsistent with the positive relief experienced from the monthly injections, which lasted nearly until each subsequent visit. It was rational for the ALJ to infer that at the time of each examination—after the effects of the prior month's injection had worn off—Plaintiff's range of motion is limited. After an injection, however, and for the subsequent three to four weeks, Plaintiff experiences an increase in that range of motion. The ALJ concluded that these benefits from the monthly injections contradicted Dr. Sharma's restrictive RFC finding. AR 22. *See Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 692-93 (9th Cir. 2009) (contradiction between treating physician's opinion and his treatment notes constitutes specific and legitimate reason for rejecting opinion); *Houghton v. Comm'r Soc. Sec. Admin.*, 493 F. App'x 843, 845 (9th Cir. 2012) (holding that ALJ's finding that doctors' opinions were "internally inconsistent, unsupported by their own treatment records or clinical findings, [and] inconsistent with the record as a whole" constituted specific and legitimate bases for discounting them).

The ALJ also concluded that the injections provided Plaintiff with more functionality in his activities of daily living. AR 22. Plaintiff argues that since the extent of that improvement in functionality is absent from the treatment notes, the ALJ cannot conclude that those activities are inconsistent with Plaintiff's RFC as determined by Dr. Sharma. (Doc. 12 at 14). However, the ALJ is not required to detail every nuance but is only required to set out specific and legitimate reasons supported by substantial evidence for rejecting the opinion of a treating physician. *See Magallanes v. Bowen,* 881 F.2d 747, 751 ("The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his

interpretation thereof, and making findings."). The Court agrees that this finding constitutes substantial evidence for rejecting Dr. Sharma's opinion as inconsistent with his treatment notes.

### 2. Dr. Vesali is a Physical Medicine and Rehabilitation Specialist

The ALJ's second reason for giving more weight to Dr. Vesali's opinion—that he is a board certified specialist in physical medicine and rehabilitation—is also legitimate. In general, more weight is given to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist. 20 C.F.R. §§ 404.1527(c)(5), 416.927(c)(5). "Board certification is recognized as a 'marker of a physician's professionalism, knowledge and skill' and allows physicians to test and enhance their clinical judgment. . . . Although certification is unnecessary, it is an added prestige upon which ALJs tend to rely." *Bogosian v. Astrue*, 2012 U.S. Dist. LEXIS 76068, at *8-9 (CD. Cal. May 31, 2012) (citations omitted). The ALJ found that Dr. Vesali's specialization coupled with his thorough examination and review of the medical records was a sufficient reason to reject Dr. Sharma's overly restrictive RFC. The Court agrees with the ALJ that Dr. Vesali's board certification and more thorough evaluation are valid reasons for the ALJ to afford Dr. Vesali's report the most weight.

### 3. Dr. Sharma's Opinion is Inconsistent With Findings and Reports of Dr. Vesali

Finally, the ALJ accorded no weight to Dr. Sharma's opinion because it conflicted with the findings and reports of Dr. Vesali. AR 22. Plaintiff challenges this finding largely in two respects.

First, Plaintiff argues that although the ALJ stated Dr. Vesali "had an opportunity to review all of Dr. Sharma's treatment notes," the record does not support this "bold assertion." (Doc. 12 at 10.). Specifically, Plaintiff argues that Dr. Vesali's statement that "records were reviewed," AR 387, does not sufficiently point to which records Dr. Vesali reviewed. *Id.* The Court disagrees. When the ALJ ordered the comprehensive orthopedic examination after the hearing, the ALJ pointed directly to which records were forwarded to Dr. Vesali—the treatment notes found in Exhibits B9F and B12F. AR 16. Indeed, Dr. Vesali noted, "records were reviewed." AR 387. Therefore, the record supports with substantial evidence the assertion that Dr. Vesali reviewed Dr. Sharma's treatment notes in Exhibits B9F and B12F prior to the

examination.

Second, Plaintiff cites *Lester*, 81 F.3d at 830–831, arguing that Dr. Vesali's examining opinion alone is not a reason to reject or fail to ascribe controlling weight to the treating physician's opinion. The Court disagrees with Plaintiff's premise that the ALJ relied solely on Dr. Vesali's opinion when rejecting Plaintiff's treating physician's opinion.

Significantly, the ALJ's decision to rely on Dr. Vesali's opinion is supported by substantial evidence in the record. The term "substantial evidence" "describes a quality of evidence ... intended to indicate that the evidence that is inconsistent with the opinion need not prove by a preponderance that the opinion is wrong." 1996 SSR LEXIS 9 at *8. Rather, "[i]t need only be such relevant evidence as a reasonable mind would accept as adequate to support a conclusion that is contrary to the conclusion expressed in the medical opinion." *Id.*

Although Plaintiff asserts that the Court cannot consider the opinion of Dr. Vesali to be substantial evidence in support of the ALJ's decision, Plaintiff ignores that the opinion was based upon an independent clinical examination of Plaintiff. Consequently, Dr. Vesali's opinion is substantial evidence in support of the ALJ's determination. *See Orn v. Astrue*, 495 F.3d 625, 632 (9th Cir. 2007) (when an examining physician provides independent clinical findings, such findings are substantial evidence in support of an ALJ's ultimate decision); *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001) (explaining an examining physician's opinion is substantial evidence if "it rests on his own independent examination").

Moreover, both Drs. Damania and Vesali examined Plaintiff and determined Plaintiff was able to at least sit, stand, and walk 4 to 6 hours, during an 8-hour workday and therefore capable of performing jobs in the national economy. AR 21. This consistency also constitutes substantial evidence. *See Tonapetya*n, 242 F.3d at 1149 (opinions of other physicians may be substantial evidence when consistent with other independent evidence in the record).

The Court concludes that the ALJ properly rejected Dr. Sharma's opinion by setting forth specific and legitimate reasons supported by substantial evidence in the record.

**B. The ALJ Properly Discounted Plaintiff's Subjective Symptom Testimony**

Plaintiff next argues that the ALJ improperly assessed his subjective symptom testimony

12

when determining the RFC. (Doc. 12 at 18.). The Commissioner contends, however, that the ALJ properly considered Plaintiff's subjective symptom testimony when concluding Plaintiff is not disabled. (Doc. 13 at 6.).The Court finds substantial evidence supports the ALJ's decision to discount Plaintiff's subjective symptom testimony when making the RFC determination.

The ALJ must engage in a two-step analysis to determine the credibility of a claimant's subjective pain or symptom testimony. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007). First, the claimant must provide objective medical evidence of his impairment that could reasonably be expected to produce some degree of the symptom or pain alleged. *Id.* Second, if the claimant satisfies the first step and there is no evidence of malingering, the ALJ may reject the claimant's testimony regarding the severity of his symptoms by providing specific findings and stating clear and convincing reasons for doing so. *Id.* The ALJ must state which testimony is not credible and what evidence in the record leads to that conclusion. *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993); *Bunnell v. Sullivan*, 947 F.2d 341, 345-46 (9th Cir. 1991); *See also* SSR 96-7p (The ALJ's decision "must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and reasons for that weight."). Other factors the ALJ may consider include: a reputation for truthfulness, any inconsistencies in testimony or conduct, daily activities, work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the Plaintiff's symptoms. *Thomas v. Barnhart*, 278 F.3d 947, 958–59 (9th Cir. 2002).

Here, the ALJ found that Plaintiff satisfied the first step because Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms." AR 20. However, the ALJ found Plaintiff's statements concerning "the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment." *Id.*

Because the ALJ did not find that Plaintiff was malingering, he was required to provide clear and convincing reasons for rejecting Plaintiff's testimony. *Smolen*, 80 F.3d at 1283-84. As explained below, the ALJ gave four clear and convincing reasons for rejecting Plaintiff's subjective symptom testimony.

### 1. *Injections Provided Significant Relief*

First, the ALJ noted that the injections routinely provided Plaintiff with three to four weeks of relief, increased the range of motion in his back, and improved Plaintiff's functionality in his daily living. AR 23. Additionally, Plaintiff was prescribed Norco, Soma, Neurontin and Xanax for pain. AR 21. The ALJ properly considered the treatment Plaintiff obtained from Dr. Sharma when considering his credibility. *See Tommasetti*, 533 F.3d at 1040 (affirming a district court's decision that a positive response to conservative treatment, such as physical therapy and the use of anti-inflammatory medication, constituted a clear and convincing reason and undermined claimant's credibility). Furthermore, medication and its effectiveness is among the many factors the ALJ will consider when evaluating credibility. *See Bunnell*, 947 F.2d at 346; SSR 88-13. THE ALJ was free to credit evidence that Plaintiff's impairments largely alleviated or improved with treatment when rejecting Plaintiff's credibility.

### 2. *Contradicting Physician Opinions*

The second reason that the ALJ discounted Plaintiff's subjective testimony is both examining physicians, Dr. Damania and Dr. Vesali, agreed Plaintiff could perform some level of work. AR 21–22. *Johnson v. Shalala*, 60 F.3d 1428, 1434 (9th Cir. 1995) (finding inconsistencies between the record and medical evidence supported a rejection of a claimant's credibility); *see also Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) ("While subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor in determining the severity of the claimant's pain and its disabling effects."). The Court finds this reason supported by substantial evidence.

### 3. *Symptomatology Waxed and Waned*

Third, the ALJ discounted Plaintiff's testimony because Plaintiff's symptomatology waxed and waned. AR 22. The ALJ mentioned that the period of Plaintiff's reduced range of motion is insignificant when compared to the whole of Plaintiff's treatment notes. AR 22. Plaintiff notes that the ALJ erred by incorrectly reporting the dates of these reports. (Doc. 12 at 14.). The Court agrees that the ALJ reported an incorrect timeframe describing Plaintiff's range

of motion.

The ALJ found treatment notes from September 2010 to September 2011 reflected a 25% reduced range of motion. AR 21. Then, from September 2011 to November 2011, a 50% reduced range of motion. *Id.* The ALJ found this fourteen-month period to be "fairly limited amount of time relative to the bulk of the treatment notes." AR 22. However, the reduced range of motion here is not accurately portrayed. Plaintiff experienced a reduced range of motion from April 2010 through December 2011—a twenty month time period.

While the Court agrees with Plaintiff that the ALJ incorrectly depicted the history of range of motion reports, the Court finds this error harmless. The Court will not reverse the ALJ's decision for errors that are inconsequential to the ultimate disability determination. *See Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006). Additionally, the ALJ provided many other reasons for rejecting Dr. Sharma's opinion and for discounting Plaintiff's subjective symptom testimony. *See Batson v. Comm'r, Soc. Sec. Admin.*, 359 F.3d 1190, 1197 (9th Cir. 2004) (holding harmless ALJ's partial reliance on assumption record did not support where ALJ gave numerous other reasons supported by the record for adverse credibility finding).

### 4. *Dismal Work History*

The fourth and final reason the ALJ gave for discounting Plaintiff's testimony is Plaintiff's "dismal work history," as pointed out by Judge Haubner, who adjudicated Plaintiff's workers' compensation claim. AR 23. Judge Haubner noted that Plaintiff had only a single "full substantial gainful activity year (1997) in his entire life" and has not worked since 1998. Plaintiff argues this is not a clear and convincing reason to support an adverse credibility finding. However, a poor work history is a clear and convincing reason that the ALJ may rely on to reject Plaintiff's subjective testimony. *See Thomas*, 278 F.3d at 959 (finding an extremely poor work history was a clear and convincing reason that negatively affected claimant's credibility regarding her inability to work).

Given the above, the ALJ properly discounted Plaintiff's subjective symptom testimony and provided clear and convincing reasons that are supported by substantial evidence for arriving at his RFC determination. AR 20–23. The ALJ identified what testimony he found not credible

and what evidence undermined Plaintiff's complaints. *See Lester*, 81 F.3d at 834. If the ALJ's finding is supported by substantial evidence, this Court will not engage in second-guessing. *Thomas*, 278 F.3d at 959. Accordingly, the ALJ's credibility determination was made with clear and convincing reasons, which were supported by substantial evidence in the record, and the sole error was inconsequential to the ultimate disability determination.

### IV.    CONCLUSION

Based on the foregoing, the Court finds that the ALJ's decision is supported by substantial evidence in the record as a whole and is based on proper legal standards. Accordingly, this Court **DENIES** Plaintiff's appeal from the administrative decision of the Commissioner of Social Security. The Clerk of this Court is **DIRECTED** to enter judgment in favor of Defendant Carolyn W. Colvin, Acting Commissioner of Social Security and against Plaintiff, Jose Luis Calderon.

IT IS SO ORDERED.

Dated:  **August 21, 2015**        /s/ Barbara A. McAuliffe
                                  UNITED STATES MAGISTRATE JUDGE